Matthew L. Lalli (6105)
Annika L. Jones (16483)
Brandon S. Fuller (17215)
**SNELL & WILMER L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
mlalli@swlaw.com
aljones@swlaw.com
bfuller@swlaw.com

Neal Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
William E. Havemann (*pro hac vice*)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Grant R. Mainland (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

*Attorneys for Plaintiff KalshiEX LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KALSHIEX LLC, | **PLAINTIFF'S MOTION FOR AN INJUNCTION PENDING APPEAL** |
| *Plaintiff,* | |
| v. | Case No.: 2:26-cv-00151-RJS |
| SPENCER J. COX, in his official capacity as Governor of Utah; DEREK BROWN, in his official capacity as Attorney General of Utah; DANIEL BURTON, in his official capacity as Chief Deputy Attorney General and General Counsel of Utah; STEWART YOUNG, in his official capacity as Criminal Deputy Attorney General of Utah; and DOUGLAS CRAPO, in his official capacity as Public Protection Deputy Attorney General of Utah, | **EXPEDITED RELIEF REQUESTED** Hon. Robert J. Shelby  Magistrate Judge Cecilia M. Romero |
| *Defendants.* | |

4910-1679-2261

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT....................................................................................................................... 4

I.     Kalshi's Appeal Raises Serious Questions That Have Divided the Courts. ....................... 4

II.    Kalshi Faces Irreparable Harm Absent an Injunction Pending Appeal. ............................ 8

III.   The Remaining Equitable Factors Favor an Injunction Pending Appeal. ......................... 10

CONCLUSION.................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*BNSF Ry. Co. v. Hiett*,
  22 F.4th 1190 (10th Cir. 2022) ........................................................................................6

*Chamber of Com. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) ......................................................................................10

*Denv. Homeless Out Loud v. Denver*,
  32 F.4th 1259 (10th Cir. 2022) ....................................................................................10

*High Plains Harvest Church v. Polis*,
  835 F. App'x 372 (10th Cir. 2020)..................................................................................3

*KalshiEX, LLC v. Johnson*,
  No. 26-cv-01715, 2026 WL 1223373 (D. Ariz. May 5, 2026)......................................2

*KalshiEX, LLC v. Orgel*,
  No. 26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026)................................2

*KalshiEX, LLC v. Flaherty*,
  172 F.4th 220 (3d Cir. 2026) ......................................................................................2, 5

*Leist v. Simplot*,
  638 F.2d 283 (2d Cir. 1980)............................................................................................5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
  456 U.S. 353 (1982)........................................................................................................7

*Mississippi v. Louisiana*,
  506 U.S. 73 (1992)..........................................................................................................6

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)........................................................................................................9

*Nken v. Holder*,
  556 U.S. 418 (2009)........................................................................................................3

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*,
  389 F.3d 973 (10th Cir. 2004) ....................................................................................3, 4

*Ortega v. Grisham*,
  148 F.4th 1134 (10th Cir. 2025) ..................................................................................10

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016)................................................................................................4

*Schrier v. Univ. of Colo.*,
  427 F.3d 1253 (10th Cir. 2005) ....................................................................3, 4, 10

*Thornton v. Tyson Foods, Inc.*,
  28 F.4th 1016 (10th Cir. 2022) ...........................................................................4

*United States v. Minnesota*,
  No. 26-cv-2661, 2026 WL 2150211 (D. Minn. July 27, 2026) ...................2, 4, 5, 10

**Statutes**

7 U.S.C. § 7.........................................................................................................11

7 U.S.C. § 7a-2.....................................................................................................7

7 U.S.C. § 9.........................................................................................................11

7 U.S.C. § 12c......................................................................................................11

7 U.S.C. § 13.......................................................................................................11

7 U.S.C. § 16........................................................................................................6

15 U.S.C. § 3001..................................................................................................11

29 U.S.C. § 1144...................................................................................................6

49 U.S.C. § 41713.................................................................................................6

Utah Code § 76-3-203............................................................................................8

Utah Code § 76-9-1404.......................................................................................1, 8

Utah Code § 76-9-1405.......................................................................................1, 8

**Other Authorities**

17 C.F.R. § 38.151...........................................................................................7, 8, 11

17 C.F.R. § 38.250................................................................................................11

17 C.F.R. § 38.255................................................................................................11

17 C.F.R. § 40.11..................................................................................................7

Alixel Cabrera, *Kalshi is Subject to Utah's Anti-Gambling Law, Judge Rules*,
Utah News Dispatch (Aug. 4, 2026), https://perma.cc/6FWH-3G7J ........................................1

Amicus Br. of CFTC, *N. Am. Derivatives Exch., Inc. v. Nevada*,
No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2....................................................................8

Andy Larsen, *Kalshi Loses in Court to Utah.  Can Utahns Still Bet on Prediction
Markets?*, Salt Lake Tribune (Aug. 5, 2026), https://perma.cc/7HWL-SDWL ........................9

Christopher J. Kirkpatrick, CFTC, Order Staying Emergency Rule Filed by
KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving
Michigan Residents (July 14, 2026), https://perma.cc/GV5X-M9PQ.....................................8

10th Cir. R. 8.1....................................................................................................................................3

Commodity Futures Modernization Act of 2000, Pub. L. No. 106-554, App. E, §
103, 114 Stat. 2763A-365, 2763A-377 (2000) .........................................................................6

Fed. R. App. P. 8..................................................................................................................................3

Fed. R. Civ. P. 62................................................................................................................................3

H.R. Rep. No. 93-1383 (1974) (Conf. Rep.)..............................................................................5, 7

Plaintiff KalshiEX LLC ("Kalshi") respectfully moves for an injunction against Defendants Spencer J. Cox, Derek Brown, Daniel Burton, Stewart Young, and Douglas Crapo ("Defendants") pending appeal of this Court's August 4, 2026 Memorandum Decision and Order denying Kalshi's renewed motion for a preliminary injunction and granting Defendants summary judgment.  Mem. Decision & Order at 24–25, Dkt. No. 65 ("Op.").

This Motion is made on the following grounds.  On August 4, 2026, the Court granted Defendants summary judgment, denied Kalshi's renewed preliminary injunction motion, and directed the Clerk to close the case.  *Id.* at 24–25.  Kalshi has appealed.  Kalshi and its personnel meanwhile face criminal exposure, Utah Code §§ 76-9-1404, 76-9-1405, and unrecoverable losses, Decl. of Xavier Sottile ¶¶ 35–39, 60–61, Dkt. No. 29-1 ("Sottile Decl."), because Defendants are unwilling to stay enforcement pending the resolution of Kalshi's appeal.  Indeed, the day the Court ruled, Utah's Attorney General publicly vowed that his "office will enforce" the State's gambling ban against prediction markets.[1]

## **INTRODUCTION**

Kalshi's appeal presents precisely the kind of substantial legal questions and severe risk of irreparable harm that warrant an injunction pending appeal.  Without emergency injunctive relief, Defendants may bring civil or even criminal charges against Kalshi and its personnel before the Tenth Circuit has considered whether such state enforcement is preempted by the CEA.  This Court should not permit that result given that the preemption question at the heart of this case has

---

[1] *See* Alixel Cabrera, *Kalshi is Subject to Utah's Anti-Gambling Law, Judge Rules*, Utah News Dispatch (Aug. 4, 2026), https://perma.cc/6FWH-3G7J.

1

fractured the courts and given that a criminal prosecution would inflict tremendous injuries that could not be undone even if Kalshi ultimately prevails on appeal.

Whether the CEA preempts state regulation of prediction markets is plainly a substantial question.  The only court of appeals to decide the question sided with Kalshi, holding that the CEA "preempts state gambling laws that seek to regulate futures trading, i.e., Kalshi's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC."  *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 230 (3d Cir. 2026).  Two district courts have enjoined state enforcement efforts materially identical to the enforcement threatened here.  *KalshiEX, LLC v. Orgel*, No. 26-cv-00034, 2026 WL 474869, at *12 (M.D. Tenn. Feb. 19, 2026) (unpublished); *KalshiEX, LLC v. Johnson*, No. 26-cv-01715, 2026 WL 1223373, at *8–9 (D. Ariz. May 5, 2026) (unpublished).  And the District of Minnesota preliminarily enjoined enforcement of a prediction-market statute against Kalshi, holding that Kalshi and the CFTC were likely to succeed on express-preemption grounds.  *See United States v. Minnesota*, No. 26-cv-2661, 2026 WL 2150211, at *1 (D. Minn. July 27, 2026) (unpublished).  Other courts, including this one, have disagreed on differing rationales.  *See* Op. at 1 n.2 (collecting decisions).

Because the courts are divided, an injunction pending appeal is appropriate to ensure that the Tenth Circuit can consider the question before Kalshi is subjected to the profound financial and reputational harms that would inevitably flow if the State brings a civil or criminal action against it.  And absent relief, Defendants could bring an enforcement action at any time.  Kalshi informed Defendants' counsel of its intent to file this Motion and asked that Defendants agree to refrain from initiating an enforcement action until the appeal is decided or to at least refrain from initiating enforcement pending resolution of Kalshi's motion for an injunction pending appeal.  On

August 5, Defendants sent Kalshi an email refusing to agree to either request.  Because of the imminent risk of criminal prosecution, Kalshi respectfully informs the Court that, absent relief here, it intends to seek relief from the Tenth Circuit on August 10, 2026.

## LEGAL STANDARD

A party seeking an injunction pending appeal must show likelihood of success on the merits, likely irreparable harm absent relief, that other interested parties will not be substantially injured, and that an injunction is in the public interest.  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (first two factors are "the most critical"); *see also* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(1)(C); 10th Cir. R. 8.1; *see High Plains Harvest Church v. Polis*, 835 F. App'x 372, 373 (10th Cir. 2020). Kalshi has moved first in this Court, as Federal Rule of Appellate Procedure 8(a)(1) requires, and if denied—or if this Court does not rule on the motion before August 10—Kalshi will seek the same relief in the Tenth Circuit.

Importantly, the relief Kalshi seeks is not among the three "specifically disfavored" categories of injunction that draw heightened scrutiny.  *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).  First, it does not "alter the status quo," *id.*, which is "the last uncontested status between the parties which preceded the controversy," measured by "the reality of the existing status and relationship between the parties and not solely . . . the parties' legal rights," *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (citation omitted).  That status is Kalshi operating on its federally designated market without state enforcement, which an injunction would preserve rather than disturb.  Second, it is "prohibitory" rather than "mandatory" because it asks Defendants to refrain from initiating enforcement, compels no affirmative act, and would not place the Court in a position of

3

"provid[ing] ongoing supervision to assure the nonmovant is abiding by the injunction." *Id.* at 1261 (citation omitted). Third, it does not "afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro*, 389 F.3d at 975. Unlike the ultimate relief Kalshi asked for in its complaint, the injunction pending appeal that this motion seeks will cease to apply as soon as the Tenth Circuit resolves the case. Kalshi's showing below satisfies either standard.

**ARGUMENT**

**I.       Kalshi's Appeal Raises Serious Questions That Have Divided the Courts.**

*Presumption Against Preemption*. The Court's express preemption analysis applies the presumption against preemption. Op. at 11–12, 15. The presumption had no role to play, and the Tenth Circuit is likely to reverse.

As the Court observed, "there is plenty of case law, including controlling case law, that would support the proposition that this is express preemption." *Transcript* at 72:4–6. Where, as here, a statute contains an express preemption clause, courts "do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation modified); *accord Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1025 (10th Cir. 2022); *United States v. Minnesota*, 2026 WL 2150211, at *10 (declining to apply presumption as to Section 2(a)(1)(A)). While the Court's Opinion distinguishes *Franklin*, Op. at 11 n.68, the Tenth Circuit is likely to find that a dissenting opinion that predates *Franklin* cannot be used to limit it. Regardless, the "clear and manifest" purpose,

4

Op. at 11 (citation omitted), of Section 2(a)(1)(A) is to confer "exclusive jurisdiction" on the CFTC, preempting any exercise of concurrent jurisdiction by the states.

*Express Preemption*. The Court's holding (at 13) that Section 2(a)'s second savings clause "strongly signals there is room for State regulation" is also unlikely to withstand appellate scrutiny. The clause's reference to preserving the "jurisdiction conferred on courts of the United States or any State" is most naturally read to preserve the jurisdiction of both federal and state courts, rather than to preserve the authority of federal courts and the states more generally. No other court has ever adopted this Court's contrary reading, which would mean that Section 2(a) has *no* preemptive force. As a result, states could regulate any and all derivatives transactions, from futures to swaps, even though Congress added Section 2(a) to the CEA in 1974 to "preempt the field," H.R. Rep. No. 93-1383, at 35 (1974) (Conf. Rep.), and even though courts have consistently recognized that preemptive effect. *See, e.g.*, *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.) (section 2(a) "preempts the application of state law").

Other courts have correctly recognized that neither of Section 2(a)'s savings clauses "reserve[s] to the states the power to regulate transactions involving swaps that take place on DCMs," because the first "begins by limiting its own scope" and the second "preserves jurisdiction for state courts in common-law actions but does not contravene the grant of CFTC's exclusive jurisdiction." *United States v. Minnesota*, 2026 WL 2150211, at *11; *see also, e.g.*, *Flaherty*, 172 F.4th at 230–31. Reading the clause to authorize state prosecution of on-DCM trading makes "exclusive jurisdiction" self-nullifying, when the "plain meaning of 'exclusive'" "necessarily denies jurisdiction" to entities not named. *Mississippi v. Louisiana*, 506 U.S. 73, 77–78 (1992); *see BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022).

The Court's reliance on Section 16(e)(2) is similarly misplaced.  While the Court held (at 14–15) that § 16(e)(2) "does not include language confining its applicability to off-DCM swaps" the text is to the contrary.  Subparagraph (A) reaches only "an electronic trading facility *excluded* under section 2(e)."  7 U.S.C. § 16(e)(2)(A) (emphasis added).  Currently, Section 2(e) does not refer to "electronic trading facility[ies]" at all, so the clause does not currently do any work.  But when Section 16(e) was enacted, it referred to "electronic trading facility[ies]" on which swaps could be traded *off* DCMs.  Commodity Futures Modernization Act of 2000, Pub. L. No. 106-554, App. E, § 103, 114 Stat. 2763A-365, 2763A-377 (2000).  Meanwhile, Subparagraph (B) applies to instruments other than swaps, as most of the cross-referenced provisions apply to other instruments that may be traded off DCMs because they are "excluded" or "exempted" from any on-DCM trading requirement.  7 U.S.C. § 16(e)(2)(B).  The Tenth Circuit is therefore likely to find that § 16(e)(2) supplements Section 2(e)'s preemption of state law trading *on*-DCM by additionally preempting some applications of state gambling laws to *off*-DCM transactions.[2]  That is particularly so because this Court's contrary reading would mean that Congress arbitrarily preempted state gambling laws as applied to swaps and other instruments traded somewhere other than a federally-designated contract market, while allowing states open season on federally-regulated DCMs.

The Court's decision rejecting preemption is also at odds with the CEA's Special Rule. The plain text of Section 7a-2(c)(5)(C)(i) permits the CFTC to bar an event contract involving

---

[2] Statutes with multiple preemption clauses of differing scope and text are ordinary.  *Compare* 29 U.S.C. § 1144(a) *with id.* § 1144(b)(2)(B); *compare* 49 U.S.C. § 41713(b)(1) with *id.* § 41713(b)(4).

"gaming" or "activity that is unlawful under any Federal or State law" if contrary to the public interest. 7 U.S.C. § 7a-2(c)(5)(C)(i); *see* 17 C.F.R. § 40.11(c). It does not, as the Court suggested (at 13–14), leave any room for the state to exercise its own authority. Rather, the Special Rule demonstrates that event contracts may be traded on DCMs and are therefore squarely within the CFTC's "exclusive jurisdiction."

*Field Preemption.* Kalshi is also likely to prevail in its assertion that the enforcement of state laws against DCMs is field preempted. This Court's contrary determination rested on the same flawed textual interpretation that undergirds its express preemption holding. As the Supreme Court has recognized, the CEA establishes "a comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982) (quoting H.R. Rep. No. 93-975, at 1 (1974)). That scheme leaves no room for competing state regulation.

*Conflict Preemption.* The Opinion recognizes (at 21 & n.136) that its conflict preemption holding diverges from *Johnson* and *Orgel*. The differing approach establishes a substantial question. And while the Opinion asserts that the CFTC's "impartial access" regulation concerns only financial discrimination, the text of 17 C.F.R. § 38.151(b)(1) makes no reference to impartial access being limited to financial consideration. Moreover, that reading is directly at odds with that of the CFTC, which has confirmed compliance with such restrictions is an "impossibility" for DCMs, which are "required by federal law to provide 'impartial access' to all eligible participants nationwide," and "cannot fulfill [that] federal mandate" if subject to state-by-state regulation. Amicus Br. CFTC at 26–27, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 (quoting 17 C.F.R. § 38.151(b)). And the CFTC's recent actions

7

demonstrate the square conflict between state and federal authority.  Last month, after a Michigan state court ordered Kalshi to cancel certain contracts entered into by Michigan residents, Kalshi was forced to declare a market emergency.  In response, the CFTC issued an order directing Kalshi not to cancel the contracts because doing so would be contrary to CEA's regulatory scheme.[3] Kalshi could not comply with the CFTC's Stay Order because it had already cancelled the contracts pursuant to the state court's order—the very impossibility that preemption exists to prevent.  And the conflict persists:  CFTC's review is continuing, and Kalshi remains subject to the order barring it from cancelling contracts.

## II.        Kalshi Faces Irreparable Harm Absent an Injunction Pending Appeal.

The Opinion does not squarely address Kalshi's irreparable harm argument, but there can be no real dispute that Kalshi would be severely and irreparably harmed if Defendants bring a civil or criminal enforcement action against Kalshi or its personnel.  In Utah, online gambling promotion is a third-degree felony, Utah Code § 76-9-1404(2)–(3) (subject to enhancement, *id.* § 76-9-1405(2)–(3)).  It carries up to five years' imprisonment, *id.* § 76-3-203, and the prosecution alone would inflict untold reputational and financial costs.

The threat of prosecution is documented and imminent.  On the day the Court ruled, the Utah Attorney General committed to enforcement, stating that "Utah's constitution bans gambling to protect Utah families, and my office will enforce that ban."  *See* Cabrera, *supra.*  The Governor

---

[3] Christopher J. Kirkpatrick, CFTC, Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving Michigan Residents (July 14, 2026), https://perma.cc/GV5X-M9PQ.

has likewise said that "Prediction markets are gambling, full stop."[4]  With judgment entered and the case closed, nothing now constrains these officials from following through on enforcement. And their refusal to agree to even a brief stay so that Kalshi can seek this injunction pending appeal strongly suggests they intend to bring an enforcement action imminently.

Without an injunction pending appeal, Kalshi will therefore suffer the classic irreparable injury of a party forced either to "continually violate" state law and "expose [itself] to potentially huge liability" or to "suffer the injury of obeying the" preempted state "law during the pendency of the proceedings and any further review." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).  And while the Court suggested that Kalshi could simultaneously comply with both state and federal law, the CFTC's recent order in Michigan shows the conflict is real.  Further, Kalshi submitted an unrebutted sworn declaration explaining all the harms to the DCM and its users that would ensue if Kalshi attempted to comply with Utah law by shutting down access to its DCM in the state.  *See* Sottile Decl. ¶¶ 18–63 (including economic and reputational harm to Kalshi, harm to users from voiding open positions, and the imperiling of Kalshi's designation as a DCM). Indeed, the financial consequences alone are enough to show irreparable harm because Kalshi cannot recover its compliance costs or liquidation losses even if it prevails; the Tenth Circuit has held economic injury irreparable in this circumstance.  *Chamber of Com. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010).

---

[4] Andy Larsen, *Kalshi Loses in Court to Utah.  Can Utahns Still Bet on Prediction Markets?*, Salt Lake Tribune (Aug. 5, 2026), https://perma.cc/7HWL-SDWL.

### III.    The Remaining Equitable Factors Favor an Injunction Pending Appeal.

Because Defendants are state officials opposing the requested relief, the balance of equities and the public interest merge. *Denv. Homeless Out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," *Ortega v. Grisham*, 148 F.4th 1134, 1154 n.13 (10th Cir. 2025) (citation omitted), and Utah has no cognizable interest in enforcing a preempted statute, *see Edmondson*, 594 F.3d at 771.

An injunction would preserve the "last uncontested status between the parties which preceded the controversy." *Schrier*, 427 F.3d at 1260 (citation omitted). Indeed, Defendants twice agreed to forbear while the merits were litigated, during the initial stay and again during the 30-day period preceding the hearing, demonstrating that the State can forbear without suffering irreparable harm. Pl.'s Renewed Mot. Prelim. Inj. at 3, 9, Dkt. No. 29; Op. at 9 n.51. Moreover, Utah retains undiminished authority to regulate (and prohibit) casinos, sportsbooks, and other gambling enterprises, *Transcript* at 58:3–15; it simply cannot regulate federally authorized transactions on a federally designated contract market. Requiring Kalshi to unwind positions now, by contrast, would inflict losses on users nationwide that no later appellate victory could undo. Sottile Decl. ¶¶ 43, 46–47. Thus, as the Minnesota court recently held, the equities favor a preliminary injunction. *See United States v. Minnesota*, 2026 WL 2150211, at *16.

Kalshi does not minimize Utah's sovereign interest or any addiction-related harms. But Kalshi already engages in substantial measures to address these harms; and it is already subject to comprehensive *federal* regulation: it is bound by the CEA's core principles, 7 U.S.C. § 7(d); 17 C.F.R. §§ 38.250, 38.255, subject to the CFTC's enforcement authority, 7 U.S.C. §§ 9, 12c, 13, and offers responsible-trading tools including funding caps, trading breaks, and self-exclusion,

*Transcript* at 117:14–118:7. The question is not whether Kalshi should be regulated while the Tenth Circuit considers its appeal, but by whom.

## **CONCLUSION**

Kalshi respectfully requests that the Court enter an injunction pending appeal barring criminal or civil enforcement of Utah's gambling laws against Kalshi and its personnel for offering event contracts, or in the alternative, short-term administrative relief pending the Tenth Circuit's decision on Kalshi's Rule 8(a)(2) motion.

DATED: August 6, 2026

Respectfully Submitted,

**SNELL & WILMER L.L.P.**

By:  */s/ Annika L. Jones*
Matthew L. Lalli
Annika L. Jones
Brandon S. Fuller

and

Neal Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
William E. Havemann (*pro hac vice*)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Grant R. Mainland (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

*Attorneys for Plaintiff KalshiEX LLC*

12

# WORD LIMIT CERTIFICATION

Pursuant to DUCivR 7-1(a)(6)(C), I, Annika Jones, certify that this *Plaintiff's Motion and Memorandum of Law in Support of an Injunction Pending Appeal* contains 2,966 words and complies with the word limits set forth in DUCivR 7-1(a)(4)(D)(i).

DATED: August 6, 2026                    **SNELL & WILMER L.L.P.**

By: */s/ Annika L. Jones* _____